UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LESTER MCCANTS,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>SKYLINE AT FIRST HILL,<br><br>　　　　　Defendant. | Case No. C21-0871-RSM<br><br>ORDER GRANTING DEFENDANT SKYLINE AT FIRST HILL'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

## I.　　INTRODUCTION

This matter comes before the Court on Defendant Skyline at First Hill ("Skyline")'s Motion to Dismiss.  Dkt. #9.  Plaintiff Lester McCants, proceeding pro se, opposes Skyline's Motion.  Dkt. #13.  Plaintiff requests oral argument, but the Court finds oral argument unnecessary to resolve the relevant issues.  Having reviewed Skyline's Motion, Plaintiff's Response, Skyline's Reply, and the remainder of the record, the Court GRANTS Skyline's Motion and DISMISSES Plaintiff's claims.

## II.　　BACKGROUND

Skyline operates the Skyline at First Hill, a senior living community in Seattle, Washington.  Dkt. #1 at ¶ 4.  Plaintiff is a 101-year-old veteran who moved into unit 1303 at

ORDER GRANTING DEFENDANT SKYLINE AT FIRST HILL'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 1

Skyline in December 2010 along with his wife, Luciana McCants, who died in June 2020. *Id.* at ¶ 3. In order to reserve a unit at Skyline, the McCants made a non-refundable deposit in the amount of $94,170, which was 10% of the entrance fee to reside at Skyline. Dkt. #1-1 at ¶ 1. On December 30, 2010, the McCants entered into a contract with Skyline entitled "90% Refundable Life Care Agreement" (hereafter "the Life Care Agreement"). Dkt. #1-1. Executing the Life Care Agreement is a condition for a resident's acceptance into the Skyline community. *Id.* at ¶ 1.1. Under the terms of the Life Care Agreement, residents must pay in full the remaining 90% balance of the entrance fee and pay ongoing monthly service fees in order to occupy their unit. For the McCants, the remaining 90% balance totaled $560,095, bringing their total entrance fee to $654,265. *Id.* at ¶ 5.2. The Life Care Agreement provides that the entrance fee will not be increased or changed for the duration of the agreement, and that upon payment, it shall be the sole property of Skyline. Furthermore, the Life Care Agreement states that "[a]ll or a portion of your Entrance Fee may be refundable under conditions set forth in Article 7 of this Agreement." *Id.*

Section 7 sets forth the conditions for termination of residency and obtaining a refund of the 90% balance from Skyline. A resident may terminate residence after occupancy at any time upon 30 days' prior written notice. *Id.* at 7.2(a). After termination of the Life Care Agreement in accordance with Section 7.2, or in the event of the occupant or occupants' deaths, Skyline must refund 90% of the Entrance fee "subject to the other terms of this Agreement." *Id.* at ¶ 7.4. With respect to the timing of the refund, the Life Agreement provides:

> [T]he refund will be paid *on the later of* : (i) ten (10) days after receipt of sufficient proceeds to fully fund the refund obligation from the next re-sale(s) and the occupancy of your Residence(s) at Skyline, or (ii) termination of this Agreement, and provided that you have vacated the Residence and removed your belongings, leaving it in good condition, less normal wear and tear, and returned possession of the residence to [Skyline].

ORDER GRANTING DEFENDANT SKYLINE AT FIRST HILL'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 2

*Id.* (emphasis added).

Skyline's October 1, 2020 letter in response to Col. McCants' demand letter sets forth the general timeline of events leading up to the McCants moving out of Skyline in February 2020. Skyline's letter states that Mrs. McCants became ill on or around September 13, 2019 and temporarily moved to Skyline's Health Center to receive skilled nursing services. Dkt. #1-2 at 1. On October 4, 2019, Mrs. McCants was transferred back to Unit 1303 until she suffered a stroke in December 2019, after which she was moved back to the Skyline Health Center. Col. McCants' complaint and response do not challenge or contradict this general timeline.

On or around February 19, 2020, the McCants moved out of Skyline. Dkt. #1 at ¶ 10; *see also* Dkt. #1-2 at 2. At the time the McCants vacated their apartment, there was a past due balance on the account that parties negotiated to around $28,000. Dkt. #1 at ¶ 7. After Col. McCants sent Skyline a demand letter seeking a refund of the entrance fee, Skyline responded that he was not entitled to an immediate refund under the Life Care Agreement. *See* Dkt. #1-2. Skyline's response cited to Section 7 of the Life Care Agreement and informed Col. McCants that only 90% of the entrance fee would be refunded, and that refund would occur within 10 days after receipt of funds sufficient to close on the resale of the McCants' apartment. *Id.* at 2. It further stated that the apartment had not been resold, and so Col. McCants' right to a refund had not yet vested. *Id.* at 3. Finally, it stated that once Skyline resells the apartment, Col. McCants' refund "will be offset by the Past Due Balance" that was due and payable immediately. Despite the fact that interest began accruing on the past due balance on July 20, 2020, Skyline stated it was its "present intention not to seek to collect on the Past Due Balance or otherwise charge for interest unless the parties resort to litigation." *Id.*

//

ORDER GRANTING DEFENDANT SKYLINE AT FIRST HILL'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 3

On June 28, 2021, Plaintiff filed the present action against Skyline for breach of contract and elder abuse and deceptive practices. Dkt. #1. Under Count 1, the complaint alleges that Skyline breached its contract by (a) failing to provide skilled nursing to Mrs. McCants after her stroke; (b) refusing to allow Mrs. McCants to live in unit 1303 after her stroke and instead requiring that she reside in the "Towers" where medical staff was present; (c) failing to obtain a medical opinion regarding Mrs. McCants' care needs before excluding her from her unit with Plaintiff, instead using "a committee of residents to vote on her ability" to remain in Unit 1303 with Plaintiff; (d) forcing Plaintiff to choose between leaving the community or sharing with his wife an apartment the size of a hospital room; (e) building a new tower addition in 2020 and beginning to sell units in the new tower before selling Col. McCants' corner unit; and (f) claiming that Skyline is actively attempting to sell Plaintiff's unit but that sales are slower than usual due to the pandemic. *Id.* at ¶¶ 12-13. Under Count 2, Plaintiff alleges that Skyline committed elder abuse and deceptive practices by withholding his funds, which he needs for medical and living expenses, and choosing to sell other units before selling Plaintiff's unit. *Id.* at ¶¶ 14-16. Finally, the last section of the complaint seeks a preliminary injunction requiring Skyline to release at least 80% of the refund and holding 20% until Skyline lists and sells Plaintiff's unit, which the Court construes as a motion for preliminary injunction. *Id.* at ¶¶ 17-18.

On August 16, 2021, Skyline moved to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6). Skyline also opposes Plaintiff's motion for preliminary injunction. Dkt. #10.

### III.   DISCUSSION

**A. Legal Standard**

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the non-moving party. *Baker v.*

*Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Absent facial plausibility, a plaintiff's claims must be dismissed. *Id.* at 570.

### B. Breach of Contract Claims

To state a claim for breach of contract, Plaintiff must allege facts showing: "(1) a contract that imposed a duty, (2) breach of that duty, and (3) an economic loss as a result of the breach." *Myers v. State*, 152 Wn. App. 823, 827–28 (2009). Although Plaintiff's complaint does not specifically identify the sections of the Life Care Agreement that Skyline allegedly breached, it appears that his claims address two sections: breach of Section 7, governing the 90% refund of his entrance fee, and Section 4, governing the conditions for transferring Mrs. McCants to an assisted living unit. The Court will address each claim in turn.

Regarding Plaintiff's Section 7 claims, Skyline argues that this claim must be dismissed because the contract language expressly requires that Plaintiff's unit be sold before the 90% refund is payable to Plaintiff. Dkt. #9 at 4-5. The Court agrees. Section 7.4 of the Life Care Agreement provides that the refund will be paid *on the later of* 10 days after receipt of sufficient funds from the resale, or termination of the agreement. *See* Dkt. #1-1 at ¶ 7.4. Plaintiff does not

ORDER GRANTING DEFENDANT SKYLINE AT FIRST HILL'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 5

dispute that his unit has not been resold.  Instead, he claims that Skyline is attempting to sell units in the newly-constructed tower before selling his unit, thereby allowing Skyline to indefinitely delay the return of entry fees by selling new units before reselling old ones.  Dkt. #13 at 4.  While this argument might be relevant to causes of action not raised in Plaintiff's complaint, it does not remedy the deficiency in his breach of contract claim.  Breach of contract requires a breach of duty, and Plaintiff has failed to identify any condition in the Life Care Agreement that requires Skyline to preference the sale of his unit before listing or attempting to sell other units.  For these reasons, he has failed to state a claim for breach of Section 7.

In his Response, Plaintiff argues that the newly-constructed towers, which were not disclosed in the Life Care Agreement, amount to "hidden terms" prohibited under Washington law.  Dkt. #13 at 1, n.1.  However, the cases Plaintiff relies upon address issues of fraud and unconscionability that rendered a contract unenforceable, wherein key terms were hidden "in a maze of fine print" such that a party had no meaningful choice when it entered into the contract.  *See, e.g.*, *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wash. 2d 293, 303, 103 P.3d 753, 759 (2004) ("Procedural unconscionability is the lack of meaningful choice, considering all the circumstances surrounding the transaction including . . . whether each party had a reasonable opportunity to understand the terms of the contract, and whether the important terms [were] hidden in a maze of fine print.") (internal quotations and citations omitted); *Marrone v. Imperial Holdings Inc.*, No. CV 13-06368 SJO, 2013 WL 12433803, at *8 (C.D. Cal. Dec. 18, 2013) (addressing fraudulent scheme where defendants planned to utilize hidden terms in loan documents).  The relevance of these cases is not readily apparent to the Court, given that Plaintiff's breach of contract claims ask the Court to enforce the terms of the Life Care

ORDER GRANTING DEFENDANT SKYLINE AT FIRST HILL'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 6

Agreement—not to strike down the agreement as unenforceable due to unconscionability, fraud in the inducement, or some alternative reason.

Turning to Plaintiff's claims under Section 4, the complaint alleges that Mrs. McCants' doctor was never consulted prior to her transfer, that she was improperly excluded from living in unit 1303 after her stroke, and that Skyline forced Plaintiff to choose between leaving the community or sharing an assisted living room with his wife.  Although the complaint alleges the economic loss resulting from Skyline's alleged breach of Section 7, i.e. the unlawful withholding of his 90% refund of the entrance fee, it makes no mention of any economic loss resulting from Skyline's alleged breach of Section 4 related to Mrs. McCants' transfer.  Plaintiff has therefore failed to state a claim for breach of Section 4 of the Life Care Agreement.

For these reasons, Plaintiff's breach of contract claims are properly dismissed.

**C. Elder Abuse and Deceptive Practices**

The complaint does not identify any statute or law relevant to Plaintiff's claims under Count 2, but he does not dispute Skyline's presumption that he is referencing the Washington Vulnerable Adult Statute, RCW 74.34.  Washington's Vulnerable Adult Statute prohibits financial exploitations of vulnerable adults, defined as "the illegal or improper use, control over, or withholding of the property, income, resources, or trust funds of the vulnerable adult by any person or entity for any person's or entity's profit or advantage other than for the vulnerable adult's profit or advantage."  RCW 74.34.020(7).

As an initial matter, the Court observes that the complaint's failure to cite RCW 74.34.020, or any other statute or law relevant to his claims for elder abuse, makes it unclear the cause of action under which he brings his claims.  On this basis alone, Plaintiff has failed to state a claim for relief.  Furthermore, Skyline moves to dismiss Plaintiff's elder abuse claim for failure to

ORDER GRANTING DEFENDANT SKYLINE AT FIRST HILL'S MOTION TO DISMISS
AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 7

satisfy the first element: behavior that amounts to "illegal or improper" withholding of Plaintiff's entrance fee refund, given that they are following the plain language of the Life Care Agreement. Dkt. #9 at 6.  The Court agrees.  The Life Care Agreement provides that Skyline may retain the 90% refund until it resells the unit.  *See* Dkt. #1-1 at ¶ 7.4.  As currently pleaded, the complaint fails to state a claim that Skyline's retention of the entrance fee, as provided for under the terms of the contract, amounts to illegal or improper behavior under RCW 74.34.020(7).  *See Matter of Est. of Sullivan*, 6 Wash. App. 2d 1023 (plaintiffs cannot show financial exploitation where costs incurred for nursing services and care were for vulnerable adult's advantage).

        Turning to Plaintiff's claim for deceptive practices, Plaintiff does not dispute Skyline's presumption that his claim for "deceptive practices" is referencing the Washington Consumer Protection Act ("CPA"), which prohibits "unfair or deceptive practices" in the course of trade or commerce.  RCW 19.86.20. To state a claim under the CPA, a plaintiff must establish all five elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wash.2d 778, 780, 719 P.2d 531 (1986).   As with his claim for elder abuse, the complaint is devoid of any reference to the CPA, making his pleading insufficient on this basis alone.  Furthermore, Plaintiff has failed to make a threshold showing with respect to elements (1) and (3).  Plaintiff has failed to sufficiently plead a deceptive act or practice given that his injury "arises out of a risk which he contracted to accept"—here, the terms of the Life Care Agreement that permit Skyline to retain his 90% refund until the unit is resold.  *Scott v. Petett*, 63 Wash. App. 50, 62, 816 P.2d 1229, 1237 (1991).  Plaintiff has likewise failed to plead any facts to support a claim that Skyline's alleged acts impacted the public interest.  For these reasons, his CPA claim is properly dismissed.

ORDER GRANTING DEFENDANT SKYLINE AT FIRST HILL'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 8

D. **Leave to Amend**

Ordinarily, leave to amend a complaint should be freely given following an order of dismissal, "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987); *see also DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ("A district court does not err in denying leave to amend where the amendment would be futile)." (citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990)). Permission to file an amended complaint is typically granted where claims are dismissed for failure to state a claim. *See* Fed. R. Civ. P. 15(a) ("[L]eave to amend shall be freely given when justice so requires"). The Court finds that leave to amend is appropriate here.

E. **Motion for Preliminary Injunction**

The last paragraph in Plaintiff's complaint requests a preliminary injunction requiring Skyline to refund at least 80% of Plaintiff's refund and hold 20% until Skyline lists and sells his unit. Dkt. #1 at ¶¶ 17-19. The Court construes this request as a motion for preliminary injunction.

In determining whether to grant a preliminary injunction, this Court considers: (1) the likelihood of the moving party's success on the merits; (2) the possibility of irreparable injury to that party if an injunction is not issued; (3) the extent to which the balance of hardships favors the moving party; and (4) whether the public interest will be advanced by the injunction. *See Miller v. Cal. Pac. Med. Ctr.*, 19 F.3d 449, 456 (9th Cir. 1994). Because the Court has already determined that Plaintiff has failed to state a claim upon which relief can be granted, Plaintiff has failed to demonstrate a likelihood of success on the merits. For that reason, Plaintiff's motion for preliminary injunction is DENIED.

//

ORDER GRANTING DEFENDANT SKYLINE AT FIRST HILL'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 9

## IV. CONCLUSION

Having reviewed Skyline's Motion to Dismiss, Plaintiff's Response, Skyline's Reply, and the remainder of the record, it is hereby ORDERED as follows:

(1) Skyline's Motion to Dismiss, Dkt. #9, is GRANTED. Plaintiffs complaint is DISMISSED with leave to amend.

(2) Plaintiff is directed to file a First Amended Complaint within thirty (30) days from the date of this Order.

(3) Plaintiff's Motion for Preliminary Injunction, Dkt. #1, is DENIED.

DATED this 22nd day of September, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE